UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES | ) | |
| v. | ) | Crim. No. 26-10153-LTS |
| LUIS PEREZ and OMAR ALFONSO, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON MOTIONS
TO REVOKE DETENTION ORDERS (DOC. NOS. 29, 31)

September 29, 2026

SOROKIN, J.

Omar Alfonso and Luis Perez, codefendants in this case, appeal from their separate orders of detention issued by Magistrate Judge Boal. Doc. Nos. 29, 31. Given the overlapping law and facts, the Court addresses both appeals in a single order but resolves each one separately, based on the individual circumstances of the relevant defendant. For the reasons that follow, both appeals are DENIED.

I. BACKGROUND[1]

In the early morning hours of December 21, 2025, a person attempted to shoot the occupant(s) of a black BMW parked on Williams Street in Lawrence. The person first approached the car with a long rifle which, despite two attempts, failed to fire. The person left, then soon returned with a pistol and fired several shots at the driver's side of the BMW. Though the car was struck, no one inside was injured. The shooter fled the scene in a Lexus. Video

[1] The parties agreed to proceed before Judge Boal by way of proffers. The Court draws the relevant facts from those proffers, including the exhibits submitted by the government, the Pretrial Services Reports, and the Indictment. No party has offered the transcript of the detention hearing, nor has any party suggested the same bears on the pending motions.

surveillance, uninvolved bystanders, and shell casings found in the vicinity of the shooting establish the foregoing events.

Investigating the shooting, police learned of a recent altercation between Perez—a reputed member of the Gangster Disciples gang—and a member of the rival Trinitarios gang outside a nightclub. Because the intended victim of the shooting was associated with the Trinitarios, police suspected Perez was the shooter and the nightclub altercation the motive. The investigation continued. Police connected the Lexus in which the shooter fled to Alfonso. Alfonso lived in an apartment in Methuen at the time, and police developed evidence suggesting that Perez had been staying there with him.

On January 14, 2026, police obtained a search warrant for the Methuen apartment. When they executed the warrant, Perez was outside the apartment in a car with his mother, who said she was delivering some papers to him. Police found Alfonso inside the apartment. During the search, police located numerous documents connecting Alfonso to the apartment and, in one bedroom, an iPhone box for Perez's phone and a PlayStation 5 logged in under the username "Luis Perez." They also recovered more than 700 grams of cocaine in the living room; a flashlight attachment for a gun in the kitchen; boxes of ammunition, a 9mm magazine, another flashlight attachment for a gun, clothing that appeared to match items worn by the shooter, and keys to the Lexus in Alfonso's bedroom; and a loaded 9mm pistol in the shared bathroom.

A social media search in an unrelated investigation yielded a short video of Perez handling a kilogram of cocaine. A search of Alfonso's phone produced photos of Alfonso holding a long gun, as well as a photo in which Alfonso, holding a pistol and cocaine, is squatting beside Perez, who is holding a pistol in each hand, with a stack of cash visible between the men.

A federal grand jury indicted both men for possession with intent to distribute more than 500 grams of cocaine. This charge carries a mandatory-minimum sentence of five years' imprisonment and a maximum sentence of forty years. 21 U.S.C. § 841(b)(1)(B)(ii). The indictment also charges each man with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This charge arises because Perez and Alfonso each have at least one prior conviction for a firearm offense.

After a hearing, Judge Boal ordered that both Perez and Alfonso be detained. Doc. Nos. 27, 28. Each man filed a motion to asking this Court to revoke his detention order. Doc. Nos. 29, 31. The government filed a consolidated opposition. Doc. No. 36. Neither defendant has requested a hearing, and the Court finds a hearing unnecessary.

## II. LEGAL STANDARD

A district court may review a magistrate judge's pretrial detention order at the defendant's request. 18 U.S.C. § 3145(b). Such review is de novo. United States v. Oliveira, 238 F. Supp. 3d 165, 167 (D. Mass. 2017). Where a detention order is reviewed on the record presented to the Magistrate Judge, "without taking new evidence" and without a hearing, "a degree of deference to the factual determinations of the Magistrate Judge tempers the independent review." United States v. McForbes, 109 F. Supp. 3d 365, 367 n.2 (D. Mass. 2015). Here, however, the Court resolves the objections without invoking or relying on such deference.

A court asked to review a detention order must assess whether there is any "condition or combination of conditions [that] will reasonably assure the appearance of the" defendant "and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Where a defendant is charged with a drug-related offense carrying a maximum penalty of more than ten years' imprisonment—as is the case here for both Alfonso and Perez—federal law establishes a presumption favoring detention. Id. § 3142(e)(3)(A). Though the presumption is rebuttable, it

continues to carry "evidentiary weight" even if rebutted. United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991) (per curiam).

## III. DISCUSSION

The Court now applies the foregoing legal standards to the pending appeals, considering each defendant's challenge separately. As it will explain, both defendants' motions fail.

### A. Alfonso

Alfonso asks the Court to release him to live with his mother in Haverhill, subject to conditions recommended in the Pretrial Services Report. See Doc. No. 29 at 2–3. In that report, Probation recommended release with various standard conditions as well as a curfew, and with Alfonso's mother serving as a third-party custodian.

Several reasons establish that the government has met its burden to prove by clear and convincing evidence that Alfonso is a danger to the community, warranting detention. The record before the Court demonstrates Alfonso (with Perez) was an armed drug dealer. A large quantity of cocaine—an amount evidencing distribution, rather than personal use—was found in his apartment. Notably, $12,000 in cash was seized during the search as well. In addition to the drugs and money, police found a firearm, ammunition, and related paraphernalia throughout the apartment. Alfonso was no stranger to firearms. Photos on his phone depicted him (and Perez) with multiple guns, drugs, and cash. He had a prior conviction for possessing a loaded firearm, and multiple other firearm-related arrests.

These facts, augmented by the statutory presumption that applies in this case, would easily meet the government's burden of proof as to danger absent countervailing considerations. And here, there is even more evidence of danger. Contrary to Alfonso's assertion that there is not "any evidence that he was involved in" the shooting that led to the search and recoveries yielding the charges in this case, id. at 2, the record before the Court includes such evidence.

The shooter drove a car registered to Alfonso's mother—a car Alfonso uses regularly himself. Clothing consistent with that which the shooter wore was found in Alfonso's bedroom. A person who spoke with investigators identified Perez—Alfonso's roommate at the time—as the shooter based upon the gait and build of the person seen in video surveillance of the incident. All of this enhances the government's showing of danger.

To rebut these facts, Alfonso points to several considerations, but none tilt the balance away from detention here. He emphasizes his connections to the community and his significant mental-health history. He notes (and the Court credits) that he has a team of providers assisting with his treatment. But this team, as he concedes, was in place during the events in question. The Court therefore finds that the available treatment providers do not mitigate the danger established by the facts the Court has recounted. Though living with his mother might, to some extent, mitigate the danger Alfonso poses, the record before the Court does not establish that his presence in her home would suffice to reduce the risk such that release on conditions is warranted in the circumstances presented.

One further point bears mention. The record suggests that Alfonso suffers from mental-health issues that are truly serious. The Court does not doubt that he would receive better care from his existing team of providers in the community than he will in pretrial detention. However, that fact alone—especially where Alfonso was receiving treatment at the time of the events in question—is not enough to rebut the government's evidence and justify Alfonso's release.

Accordingly, his Motion to Revoke (Doc. No. 29) is DENIED.

B. Perez

Perez proposes release on a GPS monitor, with a curfew, while residing with his girlfriend and their ten-month-old child. Doc. No. 31 at 2–3. He expresses interest in reenrolling

in UTEC (a community-based academic and vocational program), as well as in reconnecting with his social-service advocate at CPCS.

The government's evidence of danger as to Perez largely mirrors the evidence pertaining to Alfonso, though there are some differences. On one hand, no gun paraphernalia or ammunition was found within Perez's bedroom. But on the other hand, Perez has two prior firearm-related convictions and several other prior arrests for firearm offenses. He is in a photograph holding firearms (next to cash and Alfonso with drugs in hand), and on video handling, discussing, and apparently preparing for sale a large amount of cocaine. Though he is not charged with the underlying shooting either, the evidence connecting him to it is in some ways even stronger than that linking Alfonso to the incident. Police identified a motive, having linked him to a gang-related altercation that precipitated the event. A witness made a form of identification of him as the shooter. He is connected to the car in which the shooter fled (as the roommate of its frequent driver), and to the apartment in which clothing matching the shooter's was found.[2]

For all these reasons, and considering the applicable presumption favoring detention, the Court concludes the government has met its burden of proof by clear and convincing evidence to establish that Perez is a danger to the community. Perez has not overcome the presumption or established a basis for release notwithstanding the foregoing facts.

Accordingly, the Motion to Revoke (Doc. No. 31) is DENIED.

[2] The Court does not consider Perez or Alfonso the shooter or even, necessarily, a suspect. But the evidence drawing connections between both men and the shooting is probative insofar as it bears on (and heightens) the danger to the community posed by either man's release.

## IV. CONCLUSION

In light of the findings as to danger, the Court declines to address risk of flight. For the reasons set forth above, both motions to revoke (Doc. Nos. 29, 31) are DENIED.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge